IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS, *et al.* : | |
| : | Case No. 2:18-cv-1019 |
| **Plaintiffs,** : | |
| : | CHIEF JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Deavers |
| WESTPORT HOMES, INC., *et al.* : | |
| : | |
| **Defendants.** : | |

## OPINION & ORDER

This matter is before the Court on Defendant Westport Homes, Inc.'s ("Westport") Motion to Strike Jury Demand (ECF No. 45) and Defendant Weyerhaeuser Co.'s ("Weyerhaeuser") Motion to Strike Jury Demand (ECF No. 46). For the reasons set forth below, Westport's motion is **GRANTED** and Weyerhaeuser's motion is **DENIED**.

### I. BACKGROUND

Michael Thomas and Cassie Skaggs, Plaintiffs, entered into a contract with Westport Homes, Inc. ("Westport") to have the company build them a house in Pickaway County, Ohio. (ECF No. 34 at 3). When building the home, Westport used allegedly defective joists sold by Weyerhaeuser Company that "emit noxious and toxic gases," including formaldehyde. *Id*. at 1-2. Plaintiffs allege that the formaldehyde levels in their new house are "far in excess of acceptable levels" and have caused serious air quality issues so that Plaintiffs' home is effectively uninhabitable. *Id*. Plaintiffs claim they were forced to vacate their home months after moving in, after they had spent "hundreds of hours" exposed to the "off-gassing noxious and toxic gases" emitted by the joists. *Id*. at 4. Weyerhaeuser allegedly halted all production and sale of the offending joists and notified occupants of homes using those joists to vacate their residences. *Id*.

1

Plaintiffs requested that Weyerhaeuser and Westport replace the defective joists. *Id.* at 10. Instead of replacing the joists, Weyerhaeuser suggested that they could remedy the defect by painting over them. *Id.* at 7-8 Plaintiffs contend that there is no proof that painting over the joists will fix the defects. *Id.* Plaintiffs brought suit to recover damages against Westport and Weyerhaeuser alleging breach of contract, breach of express and implied warranties, violations of Ohio law, and other claims. *Id.* at 9-29.

Defendants Westport and Weyerhaeuser have now moved to strike Plaintiffs' jury demand, arguing that Westport's contract with Plaintiffs contains a waiver provision waiving the right to trial by jury in the event of a dispute arising out of the agreement or its enforcement. (ECF No. 45, No. 46). Plaintiffs counter that they did not knowingly and voluntarily waive their right to a jury trial due to unequal bargaining power between the parties, and that in any case the waiver should not apply to Weyerhaeuser since it was not a party to the contract. (ECF No. 47).

## II.   LEGAL STANDARD

The Seventh Amendment to the Constitution protects the right of trial by jury. An individual may waive this right in advance of any dispute so long as the waiver is "knowing and voluntary." *See K .M. C. Co. v. Irving Trust Co.,* 757 F.2d 752, 755-56 (6th Cir.1985); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc). The party objecting to enforcement of a waiver provision, however, has the burden of proving that its consent to the waiver was not knowing and voluntary. *K.M.C.*, 757 F.2d at 758.

To evaluate whether a party has made a knowing and voluntary waiver of their right to a jury trial, the Sixth Circuit has adopted the following test:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420–21 (6th Cir. 2011) (citing *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 668 (6th Cir.2003) (en banc)). The question of whether an individual has waived his or her right to a jury trial is governed by federal and not state law, since it is "a constitutional question separate and distinct from the operation of rules of substantive contract law." *K.M.C.*, 757 F.2d at 756.

### III. ANALYSIS

The purchase agreement relating to the sale and construction of Plaintiffs' house contains a jury trial waiver provision that indicates as follows:

> Builder and Buyer waive the right to trial by jury in the event of litigation regarding the performance or enforcement of this Agreement or regarding causes of action arising from this Agreement. This waiver includes, but is not limited to, all issues a) that involve the interpretation of this Agreement or any document supplemental to, or related to, the contents of this agreement; b) related to construction matters of the Home and/or improvements to the Lot, before or after their completion; and c) regarding acts or omissions committed or omitted by Builder.

(ECF No. 32-1 at 37). The waiver provision also appears on the same page as a section that Plaintiff was required to initial. *Id.*

#### A. Enforcement of Waiver Provision as to Defendant Westport

On its face, the jury trial waiver provision applies to the dispute between Plaintiffs and Defendant Westport. Plaintiffs argue that Plaintiff Thomas' waiver was not knowing and voluntary because of a disparity in bargaining power between himself, the buyer, and Westport, the builder. Additionally, Plaintiffs argue that Plaintiff Thomas was not "made aware of the significance of the fine print" waiving his constitutional right. *Id.* at 3-4. Defendant Westport argues that there is no evidence of a disparity in bargaining power between the parties and that Plaintiffs have failed to bring forward sufficient evidence to meet their burden of demonstrating that the waiver does not apply. (ECF No. 39 at 3-4).

3

The first factor—experience, background, and education— weighs only slightly in favor of Defendant Westport. Plaintiff Thomas reports he had no experience in purchasing homes and is a high school graduate. (ECF No. 47 at 3). Defendant Westport argues that a lack of experience in buying a home previously is not sufficient to demonstrate that Plaintiff lacked experience to understand and accept the waiver. (ECF No. 39 at 3-4). Although Plaintiff is a high school graduate, that fact alone is insufficient to demonstrate that Plaintiff lacked the necessary "experience, background, and education," knowingly to consent to waiver of his rights. *See Tillman v. Macy's, Inc.*, 735 F.3d 453, 461 (6th Cir. 2013) (determining that plaintiff did knowingly waive his right to jury trial where despite being a "high school graduate" the waiver provision was clear and plaintiff had plenty of time to review the contract). Plaintiff must "demonstrate a lack of sophistication" that would prevent him from understanding the terms of the agreement. *See Boyd v. Allied Home Mortg. Capital Corp.*, 523 F. Supp. 2d 650, 654 (N.D. Ohio 2007) (noting that although plaintiff was not informed of the waiver provision and there was unequal bargaining power between the parties, plaintiff did not demonstrate a lack of sophistication and the contract language was "clear" enough to understand). Therefore, this factor weighs in favor of Westport.

The second factor—the time Plaintiff had to consider the waiver and the opportunity to consult an attorney—similarly weighs in favor of Defendant. Waiver provisions are typically enforced when a party to the contract was not pressured into signing the agreement and had enough time to read the agreement and consult a lawyer about its contents. *See Kinzel v. Bank of Am.*, No. 3:10-CV-02169, 2013 WL 4679938, at *4 (N.D. Ohio Aug. 30, 2013) (waiver provision enforced where plaintiff was not pressured into signing agreement, had time to review contract and to consult attorney); *C.f. Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370,

381–82 (6th Cir. 2005) (waiver provision not enforced against plaintiff who was hired on the spot, required to sign documents immediately to accept position, was told to initial the contract in various parts without explanation as to what they were signing, and was given no opportunity to take agreement home or consult attorney). Furthermore, an unequal bargaining position between the parties to a contract "is not, in and of itself, a sufficient reason in law or equity to hold [an] arbitration agreement unenforceable," a party must instead show that as a "consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement." *Moro Aircraft Leasing, Inc. v. Keith*, 789 F. Supp. 2d 841, 850 (N.D. Ohio 2011). While Plaintiff reports that he was presented a "form purchase agreement" that he did not have the opportunity to negotiate and that there is an unequal bargaining position between the parties, he does not present any evidence that he was not permitted to consult an attorney or that he was required to sign the contract immediately. Accordingly, this factor also weighs in favor of application of the waiver clause.

The third factor—clarity of the waiver—weighs in favor of Westport since the waiver is written in clear language, is not buried in the contract, and is placed just below a section that Plaintiff was to sign. *See Tillman v. Macy's, Inc.*, 735 F.3d 453, 462 (6th Cir. 2013) (determining that party to contract waived right to try claims in court where "terms of the waiver were clear" and party had two months to review contract and a year to opt out); *Kinzel*, No. 3:10-CV-02169, 2013 WL 4679938, at *5 (N.D. Ohio Aug. 30, 2013) (noting "the jury waiver provision was clear. It is printed in bold font and, by its express terms, informs the parties to the contract that they waive 'all right to a jury trial with respect to any action or dispute relating . . . this Agreement'"). Plaintiff argues that there is no evidence he was actually aware or made aware of the significance of the waiver provision. (ECF No. 47). However, a party cannot complain that

5

he did not know the contents of an agreement that he signed when that party could have "ascertained what agreement he was entering into by merely reading it when he signed it." *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 934 (S.D. Ohio 2014) (internal quotation marks omitted).

The fourth factor—consideration for the waiver—also weighs in favor of Defendant Westport. For consideration to be considered sufficient, there must be a bargained for exchange. *See Harmon v. Philip Morris Inc.*, 120 Ohio App. 3d 187, 190, 697 N.E.2d 270, 271 (1997); *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 862 (S.D. Ohio 2003) (noting consideration "is the promise of one party to do something it is not obligated to do in exchange for another's promise to do something else."). In the purchase agreement, Defendant Westport made a binding promise to build a home for Plaintiff Thomas, and Plaintiff Thomas promised to pay for that home. This constitutes sufficient consideration. There need not be independent consideration for the jury trial waiver provision to enforce it, since the existence of sufficient consideration for the agreement as a whole is sufficient consideration for the constituent parts of that agreement. *See High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 799 (E.D. Mich. 2008) (noting "[i]t is a fundamental principle of contract law that one consideration can support many promises").

The agreement, however, does not indicate that it binds Defendant Weyerhaeuser in any way nor does the agreement contain any exchange of obligations that would constitute sufficient consideration to bind Weyerhaeuser. Defendant Weyerhaeuser cites to *Kinzel* to support its argument that the fact that it did not provide consideration for the agreement is immaterial as to the question of whether Plaintiffs waived their right to a jury trial on the claims against Weyerhaeuser. *Kinzel v. Bank of Am.*, No. 3:10-CV-02169, 2013 WL 4679938 (N.D. Ohio Aug.

30, 2013). *Kinzel*, however, does not support Weyerhaeuser's argument. In fact, the *Kinzel* plaintiffs received consideration from the party that sought to hold them to the contractual waiver of their right to a jury trial. *Id*. at *3 (noting plaintiffs "allege they pledged collateral as security pursuant to the terms of the Agreement" and thus were "bound by the terms of the contract from which their claims arise."). Here, Plaintiffs received no consideration from Weyerhaeuser pursuant to this contract that would permit the application of the waiver provision or any of the other provisions in the contract as to Plaintiffs against Weyerhaeuser.

The fifth factor requires this Court to consider the "totality of the circumstances." The balance of the factors supports that Plaintiff Thomas knowingly and voluntarily waived his right to a jury trial as to the claims against Westport. Plaintiffs have not brought forward evidence that they were deceived, placed under duress, or were unable to request further time to review the purchase agreement and consult with an attorney prior to signing. *See Schnaudt v. Johncol, Inc.*, No. 2:15-CV-2619, 2016 WL 5394195, at *5 (S.D. Ohio Sept. 27, 2016) (finding that balance of factors weighed in favor of finding that plaintiffs had waived their right to jury trial where there was no evidence that plaintiffs were deceived, put under duress, or had no time to review contract). Plaintiffs have failed to carry their burden of bringing forward evidence that they did not assent to waiver of their right to a jury trial. Accordingly, Defendant Westport's motion to strike is **GRANTED**.

### B. Enforcement of Waiver Clause to Defendant Weyerhaeuser

Defendant Weyerhaeuser argues that the principle of equitable estoppel warrants application of the jury trial waiver provision as to the claims brought against it. (ECF No. 48 at 4). Plaintiff Thomas argues that he never knowingly or voluntarily waived his right to a jury trial as it pertains to the separate and distinct claims brought against Defendant Weyerhaeuser. (ECF No. 47 at 4).

7

At issue is whether jury trial waiver provisions in contracts may be enforced as against third parties who are not signatories to the contract. While the Sixth Circuit has not spoken to this exact issue, the Supreme Court has determined, in an analogous context, that an arbitration agreement between an employer and employee does not bar the EEOC from pursuing victim specific relief in court. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). The Supreme Court's decision, however, did not address the applicability of equitable estoppel in such circumstances.

The Sixth Circuit recognizes the applicability of the doctrine of equitable estoppel in the context of arbitration provisions. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (recognizing applicability of equitable estoppel to arbitration provision but noting that estoppel only applies when "nonsignatory seeks a *direct* benefit from the contract while disavowing the arbitration provision."). Equitable estoppel permits a non-signatory to enforce a contract term against a signatory in two situations. *Liedtke v. Frank*, 437 F. Supp. 2d 696, 699 (N.D. Ohio 2006) (applying doctrine of equitable estoppel in context of arbitration clause). First, equitable estoppel applies when a signatory to the contract relies on the terms of the contract to assert his claims against the non-signatory. *Id*. Second, equitable estoppel applies when the signatory raises allegations of interdependent and concerted misconduct by both the non-signatory and a signatory to the contract. *Id*.

Neither of these two situations applies to permit application of the jury waiver clause to Defendant Weyerhaeuser. First, Weyerhaeuser does not contest that Plaintiff is not seeking to hold Weyerhaeuser to the terms of a contract that it did not sign. (ECF No. 48 at 4). Second, while the claims made against Westport and Weyerhaeuser are related to the same set of facts, they do rise to the level of "interdependent and concerted misconduct" necessary to invoke equitable estoppel. Furthermore, some courts in this circuit and the courts of other circuits have required that the "interdependent and concerted

8

misconduct" be related closely to the contract. *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2017 WL 3579753, at *6 (E.D. Mich. Apr. 18, 2017) (determining that application of equitable estoppel was appropriate but noting that requiring "the allegations regarding collusive conduct bear some relation to the agreement at issue is the better policy.").

Weyerhaeuser argues that "claims of conspiracy or collusion" are not required if the Plaintiffs' claims against the signing and non-signing parties are "intertwined" or "coextensive." (ECF No. 49 at 6). While Plaintiffs' claims against Weyerhaeuser and Westport do arise from the same set of facts, they are not interdependent. Plaintiffs' claims against Westport relate mostly to Westport's conduct as a supplier of defective joists and as the builder of Plaintiffs' home pursuant to the Purchase Agreement. Plaintiffs allege that Westport should have been aware that the joists were defective and should have taken action to inspect, test, and warn Plaintiffs about the joists before installing the joists pursuant to the terms of the contract between them and in accordance with Ohio law. (*See e.g.,* ECF No. 34 at 17). Plaintiffs' claims against Weyerhaeuser, however, are not based on contract law and relate to Weyerhaeuser's manufacture of the defective joists. The claims against Weyerhaeuser are primarily product liability and failure to warn claims. (*See e.g.,* ECF No. 34 at 18). While these claims of misconduct relate to the same set of facts—the installation of defective joints in Plaintiffs' house—they do not assert or imply "concerted misconduct." *Hagan v. Greenpoint Credit Corp.*, No. CIV.A.07 17 KKC, 2007 WL 2258866, at *8 (E.D. Ky. Aug. 3, 2007) (finding application of equitable estoppel appropriate where plaintiffs' claims against defendants each related to the contract and where the claims as a whole suggested "concerted misconduct"); *see also Reilly v. Meffe*, 6 F. Supp. 3d 760, 777 (S.D. Ohio 2014) (noting that for court to find equitable estoppel warranted, plaintiff's claims must be "intimately founded in and intertwined with the underlying contract obligations").

Importantly, none of Plaintiffs' claims against Weyerhaeuser relates to the contract between Plaintiff and Westport. *See In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2017 WL

3579753, at *6 (E.D. Mich. Apr. 18, 2017) (requiring claims of interdependent or collusive conduct between a signatory and non-signatory to relate to the contract between the signing parties for equitable estoppel to apply); *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 739 (N.D. Ohio 2011) (finding equitable estoppel appropriate where all of plaintiff's claims arose out of the contract and where allegations where premised upon theory that all defendants acted "in concert" to defraud plaintiff). In this sense, equitable estoppel is inappropriate since Plaintiffs are not attempting to enforce aspects of the contract against Weyerhaeuser without bearing the costs, and cannot be accused of trying to "trying to have [their] cake and eat it too; that is, from relying on the contract when it works to [their] advantage [by establishing the claim], and repudiating it when it works to [their] disadvantage." *In re Auto. Parts*, 2017 WL 3579753 at *6 (internal quotation marks omitted). Therefore, equitable estoppel is inappropriate in this instance as to the claims against Defendant Weyerhaeuser. Accordingly, Defendant Weyerhaeuser's motion to strike is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Defendant Westport's Motion to Strike Jury Demand (ECF No. 45) is **GRANTED**. Defendant Weyerhaeuser's Motion to Strike Jury Demand (ECF No. 46) is **DENIED**.

**IT IS SO ORDERED.**

                                             s/Algenon L. Marbley
                                             **ALGENON L. MARBLEY**
                                             Chief United States District Judge

**DATED: March 17, 2020**